Citation Nr: 1749195 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 10-48 158 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to an increased evaluation for pulmonary fibrosis, currently evaluated as 10 percent disabling. 

2. Entitlement to service connection for an acquired psychiatric disability diagnosed as adjustment disorder with depression.

3. Entitlement to service connection for a lung disability (other than pulmonary fibrosis or tuberculosis) to include plerosis, bronchial asthma, and chronic bronchitis. 

4. Entitlement to service connection for arterial hypertension.

5. Entitlement to service connection for coronary artery disease (CAD) with angina.

6. Entitlement to service connection for peptic ulcer disease (PUD), to include as secondary to a service-connected disability.
7. Entitlement to a total rating for compensation purposes based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

W.T. Snyder, Counsel


INTRODUCTION

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran had active military service from February 1954 to February 1956.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a November 2009 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO).

The Veteran's claim for service connection for an acquired mental disorder is deemed to encompass all psychiatric diagnoses. Clemons v. Shinseki, 23 Vet. App. 1 (2009). Hence, the Board has styled the issues of the case as reflected on the title page.

In a decision dated in February 2014, the Board reopened the acquired mental disorder claim and remanded it for additional development and a decision on the merits of the reopened claim. The Board also remanded the other issues for additional development.
The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ).


REMAND

This case was previously before the Board in 2014. At that time the Board remanded the claim for an increased rating for pulmonary fibrosis for another examination as the only FVC findings were from a time period prior to the Veteran's claim for an increased rating. The service connection claims were remanded for medical nexus opinions.

Under the laws and regulations, the Veteran has a responsibility of attending a VA examination to help establish entitlement to a claim. 38 C.F.R. § 3.326, 3.327. Under 38 C.F.R. § 3.655 (a), when entitlement to a benefit cannot be established without a current VA examination or re-examination and a veteran, without good cause, fails to report for such examination or re-examination, action shall be taken in accordance with 38 C.F.R. § 3.655 (b) or (c) as appropriate. 38 C.F.R. § 3.655 (b) applies to original or reopened claims or claims for increase, while 38 C.F.R. § 3.655(c) applies to running awards, when the issue is continuing entitlement. More specifically, 38 C.F.R. § 3.655 (b) states ". . . When the examination was scheduled in conjunction with any other original claim, a reopened claim for benefit which was previously disallowed, or a claim for increase, the claim shall be denied." As concerns an original claim, however, which is the case with this service connection issue, where a claimant fails to report for a scheduled examination, the claim shall be decided on the basis of the evidence of record. Id. Examples of good cause include, but are not limited to, the illness or hospitalization of the Veteran, and death of an immediate family member. See 38 C.F.R. § 3.655.

The Veteran was scheduled for several examinations in January 2015. The supplemental statement of the case reported that VAMC received notification that he failed to report to the General Medical examination, stomach and duodenum examination and Respiratory examination, all scheduled for the same date in January. The Veteran has not proffered any reason for his failure to appear. 

Significantly, however, the Board notes that the Veteran did appear for the Mental disorder examination in January 2015, scheduled just days before the other examinations. He also was seen at a VA outpatient clinic for a primary care appointment around that same time. Furthermore, it is unclear whether the Veteran was apprised of the consequences of failing to report to an examination.

On remand, to afford the Veteran every possible consideration, the Veteran should be given one last opportunity to have his examinations.

As noted, the Veteran did report for the examination scheduled for his mental disorder claim. The examiner diagnosed an unspecified depressive disorder and opined that it was not at least as likely as not that it had onset in active service or was causally connected to active service. (01/14/2016 C&P Exam-DBQ Med Opinion) The Board agrees with the assertion in the Veteran's representative's Appellate Brief that the examiner's rationale is not sufficient. Hence, an addendum is needed.

The Board also notes that the April 1969 medical report on the Veteran's mental symptoms was not translated as directed in the February 2014 remand. The TDIU claim is intertwined with the unresolved claims.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)


1. Obtain a translation of the April 1969 private treatment report related to the Veteran's mental health as previously directed.

2. Return the claims file to the examiner who conducted the January 2015 mental disorder examination. Ask the examiner to provide a full explanation and rationale for the negative nexus opinion previously provided.

3. After the above is complete, schedule the Veteran for a VA respiratory examination. 

Ask the examiner to review the claims and opine if there is at least a 50-percent probability that the Veteran has a respiratory disability other than the service-connected pulmonary fibrosis, to include asthma or bronchitis?

If the answer is, Yes, is there is at least a 50-percent probability that either is causally connected to the Veteran's active service or the service-connected pulmonary fibrosis? If the answer is, No, is there is at least a 50-percent probability that the service-connected pulmonary fibrosis chronically worsens any diagnosed respiratory disability other than the service-connected pulmonary fibrosis? If so, please provide a baseline of aggravation in terms of a percentage.

If, and only if, there is at least a 50-percent probability that the Veteran has asthma or bronchitis related to, or aggravated by, service or a service-connected disability, is there at least a 50-percent probability that that the Veteran's hypertension and/or heart disorder is causally related to, or chronically aggravated by, asthma and/or bronchitis.

The examiner must provide a full explanation and rationale for all opinions provided. The explanation will indicate agreement or disagreement with Dr. Quesada, and include a discussion of the difference between obstructive and restrictive respiratory diseases as they pertain to the Veteran, his smoking history, and his service-connected disability.

In addition the examiner should make findings as to the current severity of the Veteran's service connected pulmonary fibrosis, to include Pulmonary Function Testing (PFTs). If PFTs cannot be performed, the examiner should state why they cannot be performed.

4. Schedule the Veteran for a VA examination or forward the claims file to an appropriate clinician and obtain a clinical opinion as to whether the Veteran has peptic ulcer disease, which is at least as likely as not (50 percent or more) causally related to, or aggravated by, active service, and/or to his service-connected schistosomiasis(resolved). 

The examiner should provide an adequate rationale which considers the entire claims file, to include (a) complaints of pain and other symptoms due to schistosomiasis (See January 1957, January 1958, August 1961, 1962 records , (b) the August 1961 diagnoses of schistosomiasis and mild colitis (c) the May 1963 diagnosis of "mild to moderate colitis which could be ascribed to his partially treated schistosomiasis ", (d) the 1964 clinical records which reflect acute gastritis, (e) the January 2009 diagnosis of peptic ulcerative disease, and the 2009 and 2011 VA examination reports.

5. Thereafter, schedule the Veteran for a general medical examination to determine whether it is at least as likely as not (50 percent or greater) his service-connected disabilities, either singly or taken together, render him unable to secure or follow a substantially gainful occupation. Detailed rationale is requested for the opinion provided.

The claims folder should be made available to the examiner for review. 

The clinician is requested to provide a complete rationale for his or her opinion, as a matter of medical probability, based on his or her clinical experience, medical expertise and established medical principles.

6. In scheduling the above examinations, the AMC/RO must notify the Veteran that it is his responsibility to report for the examination and to cooperate in the development of the claim. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §3.655. In the event that the Veteran does not report for the aforementioned examination, documentation should be obtained which shows that notice scheduling the examination was sent to the last known address. It should also be indicated whether any notice that was sent was returned as undeliverable.

7. After the above is complete, re-adjudicate the issues remaining on appeal, to include whether the Veteran's service-connected disabilities render him unable to obtain and maintain substantially gainful employment. If the decision remains adverse to the Veteran in any way, issue him and his representative an SSOC and then return the case to the Board, if all is in order.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100 (b).